INDIANA EMPLOYMENT SECURITY DIVISION OF THE
INDIANA EMPLOYMENT SECURITY BOARD *v.*
PONDER ET AL.

[No. 17,961. Filed May 4, 1950. Rehearing denied June 7, 1950.
Transfer denied March 22, 1951.]

*J. Emmett McManamon,* Attorney General; *James A. Watson* and *Glen F. Kline,* Deputy Attorneys General, for appellant.

*Curtis G. Shake* and *Gilbert Shake,* of Vincennes, for appellees.

BOWEN, J.—This is an appeal from a judgment of the Knox Circuit Court in an action originally instituted before a liability referee of the Indiana Employment Security Division determining the amount of an employer's contribution under the Indiana Employment Security Act.

The facts are not disputed, and from the record it appears that Guy and Emma Wheatcraft, prior to January 1, 1946, owned and operated two restaurants in the City of Vincennes. These two restaurants consisted of the Jewel Cafe, at which restaurant they regularly had twenty-two employees, and Dorothy's Cafe with four employees. In the operation of said restaurants, the Wheatcrafts were "employers" under the Indiana Employment Security Act, and as such, had established a merit rate of contribution of .135 per cent which was lower than the standard rate of 2.7 per cent. On January 1, 1946, the appellees herein, Lovic B. Ponder and Merias A. Van Dam, purchased and took over the Jewel Cafe from the Wheatcrafts and the latter continued to own and operate Dorothy's Cafe with the approximate respective number of employees in both establishments. The Ponder and Van Dam partnership was dissolved on April 8, 1946, and since such time the appellee Ponder

has been the sole proprietor of the Jewel Cafe. Both restaurants are equipped for and operated separately as establishments for the preparation and dispensement of cooked food. A sufficient number of individuals were employed in the operation of the Jewel Cafe to have qualified the Wheatcrafts as an employer had such cafe constituted their entire business. Dorothy's Cafe which was retained by the Wheatcrafts did not have a sufficient number of employees to come within the provisions of the Employment Security Act. Following the transaction and sale of the Wheatcraft's interest in the Jewel Cafe to Ponder and Van Dam, the Indiana Employment Security Division levied assessments for employer contributions, first, against the partnership of Ponder and Van Dam, and consequently against appellant Ponder, as the sole owner on the basis of a rate of 2.7 per cent, which the appellees protested on the ground that the rate should be .135 percent. The matter went to a hearing before a liability referee who sustained the contention of the Board. This determination was, on the application of these appellees, judicially reviewed by the Knox Circuit Court which reversed the decision of the liability referee and the Employment Security Board and established the appellee contribution rate at .135 percent. This cause is an appeal from that judgment.

The sole question presented for our determination is whether the appellees' employers' contribution rate under the undisputed facts should be .135 percent or 2.7 percent, and whether or not an employing unit which qualifies as an employer under Section 2 (c) (3) of the Indiana Employment Security Act is entitled under the law to the reserve or experience account and merit rate of contribution of its predecessor. No question is raised but that the appellee Ponder, as successor to the partnership of Ponder and Van Dam, would be entitled to the lower rate if the partnership were

so entitled. The decision in this case depends upon an interpretation of the Indiana Security Act as it existed prior to the codification enactment of the law by the Indiana General Assembly of 1947. The pertinent statute provisions are to be found in the Acts of 1945, Chap. 315, p. 1393, *et seq.* The foregoing act by Section 2 (c) (2) and Section 2 (c) (3) defines the word 'employer' in the following language:

"(2) With respect to the period prior to January 1, 1943, any employing unit, individual or group of individuals, who or which acquired the organization, trade, or business of another which at the time of such acquisition was an employer subject to this Act, provided that such acquisition resulted in the continuance of such trade or business. With respect to the period subsequent to December 31, 1942, any employing unit, individual, group of individuals, firm or corporation who or which acquired the organization, trade or business within this state of another which at the time of such acquisition was an employer subject to this Act, and any employing unit, individual, group of individuals, firm or corporation which acquired substantially all the assets within this state of such employer used in or connected with the operation of such trade or business, provided that such acquisition of substantially all the assets of such trade or business resulted in the operation or continuance of a trade or business.

"(3) Any employing unit, individual or group of individuals who or which acquired a part of the organization, trade or business of another which at the time of such acquisition was an employer subject to this Act, provided that such other would have been an employer under paragraph (1) of this subsection if such part had constituted his or its entire organization, trade or business; *Provided, further,* That such acquisition resulted in the continuance of such trade or business."

Counsel for appellees Ponder and Van Dam, partners, do not contend that they acquired the entire organiza-

tion, trade, or business of the Wheatcrafts or substantially all of the assets of such trade or business of the Wheatcrafts. Also, the parties hereto concede that the appellees Ponder and Van Dam, partners, are "employers" within the meaning of Section 2 (c) (3) above. Section 4 (c) (5) of such act provides as follows:

"(5) Successive Employers' Reserve and Experience Accounts. When an employing unit becomes an employer pursuant to provisions of Section 2 (c) (2) or *2 (c) (3)* and/or when an employer acquires or should have acquired the reserve or experience account or accounts of one or more other employers as a successor to all or a part of the organization, trade or business of one or more other employers, then and in such cases such successor employer shall notify the Board in writing by registered mail not later than five days prior to the acquisition as provided by the terms of Section 14 (f) with respect to any person, group of individuals or employing unit which acquires the organization, trade or business of an employer. Such successor shall, in accordance with rules and regulations prescribed by the Board, assume the position of such employer with respect to the resources and liabilities of such employer's reserve or experience account as if no change with respect to such employer's reserve or experience account had occurred. No such successor employer shall be entitled to a recomputation of its contribution rate within the meaning of Section 5 (e) (2) for any calendar year or portion thereof subsequent to such date of acquisition and prior to the date on which notice is served upon the Board by such successor employer, as is required by Section 14 (f) with respect to any person, group of individuals or employing unit which acquires the organization, trade or business from an employer when such recomputation would otherwise result in a lower rate of contribution for such successor. . . ." (Our emphasis.)

The appellees Ponder and Van Dam contend, that, inasmuch as they became an "employer" pursuant to

the provisions of Section 2 (c) (3) by the clear and unambiguous provisions of Section 4 (c) (5), they were entitled under the law to assume the position of the predecessor employer, the Wheatcrafts, with respect to the resources and liabilities of such predecessor employer reserve or experience account and were entitled to the merit rate of contribution .135 percent.

The liability referee and the Indiana Employment Security Board takes the position that the transfer of reserve or experience accounts and merit rates of contribution is restricted to "employing units" which qualify under Section 2 (c) (2) and not Section 2 (c) (3), and adopted Regulation 204 which appellees contend is in conflict with and contradictory to Section 4 (c) (5). Such Regulation 204 reads as follows:

> "Regulation 204. Where, within the meaning of section 2 (c) (3), an employing unit, individual, or group of individuals acquires a *part* of the organization, trade, or business from an employer subject to the law, such employing unit, individual, or group of individuals becomes an employer if the part so acquired would, standing alone, have made the original employer subject to the law by reason of section 2 (c) (1), and if the acquisition resulted in the continuance of such trade or business. *In such case the reserve or experience account shall not be assumed by the successor. . . ."* (Our emphasis.)

The Knox Circuit Court upheld the appellees in such contention and found and concluded that the following quoted portion of the liability referee's conclusions of law No. 2 is error of law, to-wit: Thus, under Regulation 204, *supra,* it was not entitled to the experience account established by Guy and Emma Wheatcraft, the disposing employer; and the court finds and concludes that said Regulation 204 is of no force and effect on that question because it is in conflict with and con-

tradictory to Section 4 (c) (5) of the Indiana Employment Security Act, being Chapter 315 of the Acts of 1945 of the Indiana General Assembly.

The appellant, Indiana Employment Security Division, contends that the interpretation placed on Section 4 (c) (5) by the court below leads to absurdity and injustice.

The appellant bases its construction of the Act upon the following contentions: (1) That Section 4 (c) (5) is ambiguous, especially when construed in connection with other provisions of the Act; (2) That the Act authorizes the Board to clarify ambiguities by an adminstrative rule; (3) Board Regulation 204 is a proper exercise of the rule-making power, and is reasonable and in harmony with the purpose and intent of the law to stabilize employment; (4) That for years the appellant has interpreted the Act in accordance with Regulation 204; (5) That it would not be equitable, nor proper from a practical standpoint, to transfer the account of a predecessor employer to a successor of only a part of the trade, business or organization, and no provision is made for the transfer of only part of the reserve or experience account; (6) That employers who have earned a merit rate of contribution through their own efforts should not lose their merit rate to a purchaser of only a part of their organization, trade, or business. When the merit rate of the predecessor employer is transferred to an acquirer of only a part, the predecessor employer must then ordinarily pay contributions at the standard rate of 2.7 percent.

There are no Indiana cases construing the sections of the statute in question.

In *Eiber Realty Co.* v. *Dunifon* (1948), 84 Ohio App. 532, 82 N. E. 2d 565, the court in denying a transfer of an experience account stated: ". . . G. C. Section

1345-4 (c) (1) provided: '. . . If an employer shall transfer his business or shall otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer's account, and to continue the payment of all contributions due under this act.' We are of the opinion that the above statute requires that an employer, in order to transfer his business so that his successor in interest acquires and assumes the resources and liabilities of such employer's account, transfer the business in its entirety. . . . Our conclusion on this interpretation of this section of the General Code is fortified by the fact that prior to October 1, 1941, the appellee would be entitled to the relief he is here seeking. This section then provided: 'If any employer shall transfer his business *in whole or in part* or shall otherwise reorganize such business, the successor in interest is hereby required to assume (in proportion to the extent of such transfer, as determined by the commission) the resources and liabilities of such employer's account, and to continue the payment of all contributions due under this act.' (Emphasis ours.) It will be noted that this section provided for a partial transfer of an employer's business which provision has now been eliminated. It must clearly be presumed that the Legislature intended to abolish a portion of a transfer of an employer's business when it struck out of the act the words 'in whole or in part'."

Section 4 (c) (5) of the Indiana statute in question is very similar to the above quoted Ohio statute prior to its amendment. The Indiana Employment Security Board by Regulation 204 sought to do the same thing which was done by legislative amendment in Ohio, and to provide by such regulation that where a successor employer acquires a *part* of the business of a predecessor the reserve and experience

account shall not be assumed by the successor. The result sought to be accomplished by such regulation seems desirable, and it is apparent that injustice and inequalities may arise by reason of the literal construction of Section 4 (c) (5) of the Act as determined by the court below. However, since the provisions of such act are plain and unambiguous and are not rendered nugatory or ambiguous by other provisions of the statutes, the result sought to be accomplished by Regulation 204 can only be brought about by an amendment of Section 4 (c) (5) by the General Assembly, and the lower court properly concluded that Regulation 204 was in conflict and contradictory to Section 4 (c) (5) of the Indiana Employment Security Act.

We do not have a situation where the Legislature has laid down broad general principles and declared a policy which might be a proper subject for administrative regulation, but we have a set of circumstances in which the State Legislature has provided specifically that in cases where a successor employer acquires a predecessor business in whole (Section 2 (c) (2) *or in part* Section 2 (c) (3)), he is entitled to assume the position of such previous employer as if no change with respect to such employer's reserve or experience account had occurred.

A specific legislative yardstick is provided, which cannot be broken or shortened by an administrative regulation. Rules and regulations promulgated by administrative boards must be reasonable, and such boards cannot enlarge or vary, by the operation of such rules, the powers conferred upon them by the Legislature, or create a rule out of harmony with the statute. Any regulation which is in conflict with the organic law or statutes of the State is wholly invalid. *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89; *Wallace* v. *Feehan* (1934), 206 Ind. 522,

190 N. E. 438; *Whitcomb Hotel* v. *California Employment Comm.* (1944), 24 Cal. 2d 753, 151 P. 2d 233, 155 A. L. R. 405.

The decision of the lower court was not contrary to law. The judgment is affirmed.

NOTE.—Reported in 92 N. E. 2d 224.