**ASTRAL INDUSTRIES, INC., Appellant (Defendant Below),**

v.

**The INDIANA EMPLOYMENT SECURITY BOARD and William E. Matheny, Liability Referee, Appellee (Plaintiffs Below).**

No. 2–778A245.

Court of Appeals of Indiana,
Fourth District.

April 16, 1981.

Michael C. Williams, Winchester, for appellant.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

This is an appeal from a decision of a Liability Referee for the Indiana Employment Security Board (Board), which appeal from his findings to this Court is authorized by Ind.Code 22–4–32–8 and 22–4–32–9. The Referee found Astral Industries, Inc., (Astral) had acquired substantially all the assets within the State of Indiana of Meyer Manufacturing Company (Meyer), and that it was a successor employer to Meyer within the meaning of the Indiana Employment Security Act, Ind.Code 22–4–1–1 *et seq.*, thus requiring it to assume the resources and liabilities of Meyer's unemployment compensation experience account pursuant to IC 22–4–10–6 *infra*. Astral appeals this decision, contending the Referee incorrectly determined as a matter of law Astral 1) had acquired substantially all of Meyer's assets; and 2) had used those assets in the operation or continuance of a business so as to make it a successor employer under the Act. We affirm.

The following facts give rise to the instant litigation: On March 28, 1977 Astral, a casket manufacturer, notified the Indiana Employment Security Division of its intention to purchase all of the inventory and assets of Meyer, which manufactured casket "shells," on April 4, 1977. It is undisputed that on this latter date, Astral in fact purchased from Meyer certain real estate, manufacturing equipment, and rolling stock for a price of $890,000, some $200,000 of which was paid for real estate in the State of Alabama. In addition, at least 22 of Meyer's 66 employees were hired by Astral as of June 30, 1977. Thereafter, in July, Astral received notification Meyer's unemploy-ment compensation experience balance had been transferred to Astral's experience account, with possible adverse financial effect on Astral. Consequently, Astral requested a hearing before a Liability Referee of the Board, and on May 19, 1978, such a hearing was held. On June 7, 1978, the Referee entered his decision that Astral was in fact a successor employer to Meyer. Pursuant to Astral's initial appeal of that determination, this Court held, in a memorandum opinion handed down June 26, 1979, the merits of such decision could not be meaningfully reviewed without further findings of fact, and the cause was accordingly remanded. Astral now launches a second appeal on the merits, contending the Referee's decision was contrary to law because Astral did not purchase substantially all of Meyer's assets, or, in the alternative, because the assets purchased, even if substantial, were not used to continue Meyer's business.

The supplemental findings, conclusions and decision as stated by the Liability Referee are as follows:

"FINDINGS OF FACT

1) Prior to a fire at its original location, Astral Industries engaged in the business of manufacturing caskets, a finished product, and selling this finished product to morticians.

2) Prior to the sale of the assets of Meyer Manufacturing Corporation to Astral Industries, Inc., Meyer Manufacturing Corporation manufactured shells for caskets which they sold primarily to other manufacturers who produced the finished product.

3) Astral Industries, Inc. had a fire and lost the primary site for the production of its finished product.

4) Meyer Manufacturing Corporation was in the process of either selling or closing its business of manufacturing metal shells for caskets.

5) For the payroll period ending 4–3–77, Meyer Manufacturing Corporation reported sixty-six (66) employees for payroll purposes. (Division Exhibit No. 3)

6) For the payroll period 1–1–77 to 3–31–77 Astral Industries, Inc. reported seven (7) covered employees.

7) For the payroll period 4–1–77 to 6–30–77 Astral Industries, Inc. reported ten (10) covered employees in April, twenty-four (24) in May and thirty-four (34) in June. (Employer's Exhibit No. 4)

8) On 3–28–77 Astral Industries, Inc. gave notice to the Indiana Employment Security Division, through its attorney, of the transfer of all the assets of Meyer Manufacturing Corporation to Astral Industries, Inc. (Division Exhibit No. 2) on April 4, 1977.

9) On April 4, 1977, for a purchase price of Eight Hundred Ninety Thousand Dollars ($890,000) Astral Industries, Inc. purchased real estate, manufacturing equipment, and rolling stock from Meyer Manufacturing Corporation.

a) Real estate purchased was that in Indiana and included Two Hundred Thousand Dollars ($200,000) paid for real estate in the State of Alabama.

b) The equipment purchased included two (2) large presses, numerous dies, as well as raw materials, office equipment, and twenty-four (24) trailers, and seven (7) tractors (semis).

10) Not purchased from Meyer Manufacturing Corporation was one (1) dump-truck, one (1) lowboy trailer, and (1) semi-tractor, and a 1976 Chevrolet Monte Carlo.

a) Astral Industries, Inc. did not purchase Accounts Receivable in the amount of Three Hundred Seventy-Three Thousand Dollars ($373,000), reserve for bad debts, cash on hand, and Notes Receivables, amounts unknown.

b) Astral Industries, Inc. further did not purchase five-hundred (500) casket shells previously manufactured by Meyer Manufacturing Corporation.

11) On June 30, 1977 Astral Industries, Inc. reported forty-four (44) employees [but see finding No. 7 which states 34 covered employees] working in Indiana at the former location of Meyer Manufacturing Corporation, and at least twenty-two (22) of those employees were former employees of Meyer Manufacturing Corporation. (Division Exhibit No. 4)

12) Meyer Manufacturing Corporation had no employment or business operation after April 4, 1977.

13) While the job duties of employees of neither Meyer Manufacturing Corporation nor Astral Industries, Inc. were detailed, it was testified that all duties were specialized and generally not subject to common hire for casual labor.

14) The assets of Meyer Manufacturing Corporation, purchased, but not used by Astral Industries, Inc. were primarily tractor-trailer units, the condition of which or the actual price paid not covered by testimony.

15) The real estate, manufacturing equipment, and other equipment incidental to conducting a business were used by Astral Industries, Inc.

CONCLUSIONS OF LAW

1) Both Meyer Manufacturing Corporation and Astral Industries, Inc. were employing units in Indiana on April 4, 1977. Meyer Manufacturing Corporation was engaged in manufacturing casket shells, and Astral Industries, Inc. produced a finished product, but previous to April 4, 1977 did not manufacture the shells.

2) After April 4, 1977 Astral Industries, Inc. became engaged in the manufacture of casket shells as well as continuing to produce the finished product.

3) Meyer Manufacturing Corporation's business of manufacturing casket shells continued after April 4, 1977, but was then conducted by Astral Industries, Inc. and Meyer Manufacturing Corporation was no longer conducting a business.

4) In the process of a company either going out of business or selling its operation, the disposer who by sale or otherwise dispenses with the necessary assets required to conduct a business, and retains only cash assets or accounts receivables, has disposed of substantially all the assets used in connection with the operation of such trade or business.

5) The Employment Security Act is one that primarily provides for the continued protection of employees, and whether or not the sale of assets results in a business continuing in operation. The facts are such that the operation of manufacturing casket shells and the additional production of a finished product continued after the transfer of assets. Prior to the transfer Astral Industries, Inc. had six (6) employees, and Meyer Manufacturing Corporation had sixty-six (66). Within three (3) months after the transfer Astral Industries, Inc. had employed forty-four (44) people.

DECISION

The Referee finds that Astral Industries, Inc. was a successor employer and on April 4, 1977 acquired substantially all the assets of Meyer Manufacturing corporation within this state which were used in or in connection with the operation of Meyer Manufacturing Corporation."

Astral apparently argues in its frequently indecipherable initial and supplemental appellate briefs that it is not a successor employer to Meyer because 1) it did not acquire "substantially all" of the latter's assets (particularly as regards $373,000 in accounts receivable) and 2) in any event, the policies attending IC 22–4–10–6, *infra*, are inapplicable because Astral, pursuant to IC 22–4–7–2(a), *infra*, did not use some of such assets in the operation of a business, and "there is nothing to suggest Astral is a continuance of Meyer." Our review of these arguments begins by considering the language of IC 22–4–10–6, which in pertinent part describes a "successor employer" as follows:

"When an employing unit (whether or not an employing unit at the time of the acquisition) becomes an employer pursuant to provisions of subsection (a) of IC 1971, 22–4–7–2 hereof, or when an employer acquires the organization, trade or business, or substantially all the assets of another employer such successor employer shall in accordance with the rules and regulations prescribed by the board assume the position of such predecessor with respect to all the resources and liabilities of such predecessor's experience account." [1]

The statute referred to in this provision, IC 22–4–7–2(a), further states in this regard an "employing unit" becomes an "employer" with respect to certain employees when it acquires a business or its assets under the following prescribed circumstances:

(a) " 'Employer' also means: Any employing unit whether or not an employing unit at the time of the acquisition which acquires the organization, trade, or business within this state of another which at the time of such acquisition is an employer subject to this article [22–4–1–1—22–4–38–3], and any employing unit whether or not an employing unit at the time of the acquisition which acquires substantially all the assets within this state of such an employer used in or in connection with the operation of such trade or business, Provided That the acquisition of substantially all such assets of such trade or business results in or is used in the operation or continuance of an organization, trade or business." [2]

I.

With respect to its first argument, Astral contends that, at most, it purchased some 60% of Meyer's assets, since its purchase price of $690,000 for Meyer's Indiana assets did not include $373,000 in accounts receivable as well as casket shells and certain vehicles held by Meyer.[3] Apparently,

---

1. An "employing unit" has been defined pursuant to IC 22–4–6–1 as an individual or organization which has one or more individuals within the state performing services for remuneration, and an "employer" has been generally defined, in IC 22–4–7–1, so as to include certain prescribed "employing units."

2. The word "if" was substituted for the words "Provided That" in an amendment to this statute on July 1, 1977.

3. Although Astral cites testimony the casket shells were worth $45,000, and that a low-boy trailer, dump truck, and semi-trailer had a com-

the parties are in agreement such a percentage, if accurate, would not represent "substantially all" of Meyer's assets. In response to the position taken by Astral, however, the Board contends that under a proper construction of the Act, the amount of any accounts receivable held by Meyer should not be considered as part of its assets in deciding whether Astral is a successor employer. For the reasons discussed below, we agree with the Board in this regard.

Our analysis begins by observing, as have other courts when applying similar statutes pertaining to successor employers who take over the business or assets of an ongoing concern, that, implicit in such legislation, "[t]he theory obviously is that the business is to be treated as a single continuing employment," *Harris v. Egan,* (1948) 135 Conn. 102, 106, 60 A.2d 922, 924, discussed in Annot., 4 A.L.R.2d 721 (1949). In this context it has been stated,

" 'It is apparent from the plan embodied in the act ... that its primary object is to relieve against the distress of unemployment, and that the imposition of the tax upon employers is incidental.' "

*Id.* at 106, 60 A.2d at 924.

With this purpose in mind, we are aware, as Astral contends, that the literal terms of IC 22–4–10–6, *supra,* describing a successor employer do not expressly exclude accounts receivable from the "assets" to be considered in deciding whether one business should assume the experience account of another. As is evident, however, from the fact the Act never specifies what *does* constitute an "asset," such language may be susceptible to a variety of characterizations, some of them outside the particular purpose of the legislation in question. Thus, we

bined value of $40,000, we note the Liability Referee did not make any finding regarding the value of these items.

4. As is indicated by the language of IC 22–4–7–2(a), *supra,* and IC 22–4–10–6, *supra,* the former statute is apparently addressed on its face only to those instances in which an employing "unit" which is not already an employer acquires the assets or business of another employer. Although it appears Astral was al-

cannot say the meaning of the provision is clear and unambiguous on its face, and under such circumstances, a Court on appeal can properly consider the consequences of any given construction. *Economy Oil Corp. v. Indiana Department of State Revenue,* (1974) 162 Ind.App. 658, 664, 321 N.E.2d 215, 218. See *also Flynn v. Klineman,* (1980) Ind.App., 403 N.E.2d 1117. As this Court has elsewhere asserted, in *Town of Kewanna Water Works v. Indiana Employment Security Board,* 131 Ind.App. 400, 408, 171 N.E.2d 262, 266:

"It is the duty of a court in construing a statute to seek to discover and carry out the evident intention of the Legislature. In *C. & C. Dist. Transit Co. v. Mueller, supra,* [213 Ind. 221, at page 534, 12 N.E.2d 244, at page 249], the court set forth with approval this quotation at page 534, 12 N.E.2d 244:

'In the search for that intention the court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subjects, or relative subjects, whether in force or repealed, to contemporaneous legislative history, and to the evils and mischiefs to be remedied.' "

Pursuant to these principles of statutory construction and in viewing our act as a whole, we conclude there are additional indications of our Legislature's intent, outside the language of the single provision embodied in IC 22–4–10–6, *supra,* which shed light on the meaning of the word "assets" as it is used in that statute pertaining to successor employers. In particular, we find significant, for example, the language of IC 22–4–7–2(a), *supra,*[4] a statute describing the cir-

ready an employer before acquiring Meyer's assets (see Finding No. 6), we conclude the parties have correctly reasoned the language of IC 22–4–7–2(a), *supra,* is of some significance in applying IC 22–4–10–6, *supra,* to an entity which is already an employer. In discussing the second issue of its appeal, pertaining to whether Meyer's assets were used by Astral in the continuation of a business, Astral urges this Court to consider these statutes in *pari materia.*

cumstances under which an "employing unit" may become an "employer" by acquiring the assets of another employer, and which statute is itself referred to in the terms of IC 22–4–10–6, *supra*. Significant to our opinion, the former statute, in describing the assets which an employing unit must acquire in order to become a successor employer, is concerned only with those assets which "are used in connection with the operation of" the predecessor employer's "trade or business," *and* which are used or result in *"the operation or continuance of an organization, trade or business."* (Emphasis added.) In other words, the successor employer is required to utilize the assets which he acquires in his business, and those same assets must have been used by his predecessor in the predecessor's own business.

In viewing such language, we believe, as the Court concluded based on similar facts in *Harris v. Egan, supra*, it is manifestly clear that to a successor employer such as Astral, the accounts receivable of an acquired business would be of no use in operating or continuing a business. *Harris v. Egan, supra* at 107, 60 A.2d at 925. Thus, in *Harris*, where the statute in question, unlike our own IC 22–4–7–2(a), *supra*, did not *expressly* require that the acquired assets should result in the operation or continuation of a business, the Court ultimately arrived at the following determination:

"Delaney sold to the plaintiffs the land and buildings where he operated his business, all the machinery and equipment located therein all his automotive equipment, all his merchandise and stock in trade, and the good will of the business. The plaintiffs moved in, added their own merchandise and continued the same business through another form. Upon its face, this seemingly complete acquisition of Delaney's business by the plaintiffs appears to bring them within the provisions of the statute and to make them a liable employer. The only substantial question is whether Delaney's retention of his accounts receivable and payable makes the statute inapplicable. The act says 'substantially all.' We have said

that 'The word "substantially" * * * is a term of some elasticity * * *; its significance is relative, necessarily relating to the purpose' of the provision in which it is used. *Loglisci v. Liquor Control Commission*, 123 Conn. 21, 27, 192 A. 260, 263; see also *In re Temtor Corn & Fruit Products Co.*, D.C., 299 F. 326, 331. It does not indicate a definite, fixed amount of percentage but is an elastic term which must be construed according to the facts of the particular case. *United States v. Whyel*, D.C., 19 F.2d 260, 262. In applying the statute, a prime question in determining whether substantially all of the assets, the organization or the trade or business was taken over is: Did the acquisition result in a substantial continuation of the same or a like business?

Whether the plaintiffs did take over substantially all of the assets or business of Delaney was a question of fact to be determined primarily by the defendant administrator. See *Chinigo v. Ehrenberg*, 112 Conn. 381, 384, 152 A. 305; *United States v. Whyel*, supra. The question for the trial court was whether his conclusion was illegal or unreasonable.

*It must be conceded that from an accounting viewpoint the accounts receivable and the accounts payable constituted a part of Delaney's assets. However, they were of no particular value to the buyers in the continuation of the business.* As we have pointed out, the act cannot be restricted to assets, and the test is: Did the plaintiffs acquire substantially all of the assets or business of Delaney? Upon the facts of the case, the administrator could decide that they did, and the trial court was not in error in dismissing the appeal." (Emphasis added.)

*Id.* at 107, 60 A.2d at 925. Since our statute is in fact more explicit than that in *Harris* because the former suggests only those assets which may be utilized by a successor should be considered, we may conclude without going beyond the language of our Act that the "assets" acquired by a successor employer in the manner described in IC

22–4–10–6, *supra*, and IC 22–4–7–2(a), *supra*, need not include the accounts receivable of a predecessor, regardless of their value, to constitute substantially all of that predecessor's assets. As was the case in *Harris*, we believe our Legislature did not intend to view accounts receivable as an "asset" in effectuating its intention under the Indiana Employment Security Act that "the business is to be treated as a single continuing employment." *Harris v. Egan, supra* at 106, 60 A.2d at 924.

■ Our conclusion in this regard draws further support from a regulation, promulgated by the Board and not cogently challenged by Astral,[5] in which "assets" as used in IC 22–4–10–6, *supra*, is described merely as the *fixed assets* which are acquired by an employer from his predecessor.[6] Thus, it is stated in 640 IAC 1–3–12 (1979 Ed.), in part, that

"(1) Each employer who disposes of all or part of his organization, trade, or business pursuant to Chapter 7, Section 2(a) or (b) [subsection (a) or (b) of IC 22–4–7–2, *supra* ] and each employer who disposes of substantially all of the *fixed* assets used in the business disposed of, pursuant to Chapter 7, Section 2(a) [subsection (a) of IC 22–4–7–2, *supra*], shall immediately notify the Board in writing." (Emphasis added.)

It is axiomatic that "fixed assets" do not include accounts receivable. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 861 (1976), where "fixed assets" is defined as "tangible assets (as land, building, machinery, equipment) of a permanent or long-term nature;" and see BLACK'S LAW DICTIONARY at 765 (rev. 4th ed. 1968), which defines the phrase as "[a]n asset essential to continuance of undertaking a proper operation of business."

From all of the foregoing, we believe it is clear under the Act that a determination of whether one is a successor employer is to be made only with reference to those assets which may be used in the businesses of both the predecessor and successor employers. We thus conclude, based on the language of IC 22–4–7–2(a), *supra*, and by virtue of the regulation found at 640 IAC 1–3–12, *supra*, that the Referee correctly refused to consider accounts receivable in determining that Astral acquired "substantially all" of Meyer's assets.[7]

## II.

In addition to contending it did not purchase "substantially all" of Meyer's assets, Astral advances a further argument based on the policies of the Act expressed in the proviso of IC 22–4–7–2(a), *supra*, where it is suggested a successor relationship is established only if "the acquisition of substantially all such assets of such [the seller's] trade or business results in or is used in the

---

5. Astral states merely that "the Statute itself does not refer to fixed assets and the Statute would be controlling as to any regulation which is in conflict with the organic law or statutes of the State is wholly in valid," citing *Indiana Employment Security Division v. Ponder*, (1950) 121 Ind.App. 51, 92 N.E.2d 224, without presenting any argument describing why the statutes and regulations involved in the case at bar are necessarily in conflict.

6. As our Courts have repeatedly held, there is a presumption of legislative acquiescence when a statute has not been changed in light of a long adhered to administrative interpretation such as that embodied in 640 IAC 1–3–12, *supra*, in effect at least since 1955, and such an interpretation may be important evidence of the meaning of a statute to those charged by law and most concerned with its administration. *See Economy Oil Corp. v. Indiana Department of State Revenue, supra* at 665–66, 321 N.E.2d at

219, citing *Baker v. Compton*, (1965) 247 Ind. 39, 42, 211 N.E.2d 162, 164.

7. We find distinguishable a decision cited by Astral, *Spagnola v. State*, (1946) 237 Iowa 645, 23 N.W.2d 433, where no corresponding limitation, that is, a requirement that the assets be used in the businesses of both the predecessor and successor employers, was evident in the legislative mandate. See also *Michigan Employment Security Commissions v. Arrow Plating Co.*, (1968) 10 Mich.App. 323, 159 N.W.2d 378, and *In Re Lord Baltimore Press, Inc.*, (1966) 4 Ohio St.2d 68, 212 N.E.2d 590, in which cases it was held, under legislation similar to that in *Spagnola*, that accounts receivable should be considered in determining whether an acquiring employer had purchased substantially all of the assets of a predecessor employer.

operation or continuance of an organization, trade or business." Meyer contends 1) less than 50 per cent of the assets of Meyer were both purchased and used in the operation or continuance of a business, taking into consideration both the accounts receivable which were not purchased, as well as tractor-trailers and "dyes" [sic] which purportedly were not used;[8] and 2) "there is nothing to suggest that Astral is a continuation of Meyer," since Meyer produced casket shells, while Astral now manufactures and sells finished caskets.

Significantly, Astral's first contention assumes, in contrast to the conclusion earlier arrived at herein, that accounts receivable must be considered with reference to the assets "used" by Astral as a successor employer. It is apparently Astral's position that, taking into consideration the accounts which were not purchased, it did not use sufficient assets under the statute to minimally become a successor employer based on the acquisition of Meyer. Whatever may be the merits of such an argument in a proper case,[9] it is evident it must fail in the instant situation. As we have already determined herein, accounts receivable, being of no particular value to a business which

takes over the assets of another, are irrelevant to deciding whether there is a continuing employment under our Act. Accordingly, it is of no significance, even assuming *arguendo* the accuracy of Astral's calculations, that it may have *used* less than 50 per cent of Meyer's assets including such accounts receivable.[10]

■ Astral also contends, however, it is not a "continuation" of Meyer. Initially, we find nothing in either the language or the spirit of the Indiana Employment Security Act which requires that the predecessor's *same* business be continued. As noted above, IC 22–4–7–2(a), *supra*, cited by Astral, requires merely that an acquisition must be used or result in "the *operation or continuance of an* organization, trade or business." (Emphasis added.) Assuming *arguendo* the Act does involve a requirement that a business "similar" to that of the predecessor is maintained, as was the case in *Harris v. Egan, supra*, we believe the facts in the instant case would clearly support such a conclusion, the only apparent difference being that Meyer manufactured casket shells, while Astral (which was able

---

8. See Finding No. 14, which states the tractor-trailer units were the *primary* assets purchased which were not used. No finding was made substantiating the allegation that various dies were not used as well. With respect to these dies, it might also appear from Astral's brief, although it is not cogently argued, that Astral contends Finding No. 15 is erroneous because only 10% of the dies acquired by Astral could actually be used by it, while Finding No. 15 states "[t]he real estate, manufacturing equipment, and other equipment incidental to conducting a business were used by Astral Industries, Inc." We see no conflict between this general finding describing *types* of assets which were utilized, and the contention made by Astral that not all of the dies were used. As Astral itself admits, at least 10% of the dies were used, and thus it would be accurate to conclude the dies were among the "manufacturing equipment" which it acquired and used.

In light of Findings 14 and 15, we also find no merit in Astral's further contention, which also was not cogently argued, that the Liability Referee failed to take into account "either by conclusions of law or in his decision" the assets not used by Astral. Clearly his ultimate decision that "substantially" all the assets were

acquired took into account his earlier findings of fact.

9. In this regard we note Astral apparently assumes the language of IC 22–4–7–2(a), *supra* requires that "substantially all" of the assets must be used, as well as acquired, by a successor employer. By its literal terms, the statute only uses the phrase "substantially all" in connection with the assets acquired. Because of the result reached in the instant case, we need not determine if an ambiguity exists, nor need we resolve any such ambiguity which may be present.

10. Since Astral thus has failed to demonstrate that, contrary to the decision of the Referee, it did not "use" the assets it acquired as provided in IC 22–4–7–2(a), *supra*, we need not consider the further argument possibly suggested in its brief, that the acquisition of Meyer did not "result in" the operation of a business because Astral "was in business prior to the acquisition of assets from Meyer." As the statute clearly states, IC 22–4–7–2(a) merely requires that the acquisition of assets "results in or is used in the operation or continuance of an organization, trade or business." (Emphasis added.)

to expand as a result of the acquisition) manufactures the finished product.[11]

The decision of the Referee is affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.

---

11. See also Conclusion No. 1, which states Astral did not previously manufacture casket shells, and Conclusion No. 2, which states that after acquiring Meyer, Astral became engaged in the manufacture of casket shells.