**In the Matter of the Appeal of ASSOCIATED SIGN & POST, INC. From an Adverse Ruling of the Bloomington Human Rights Commission, Contract Compliance Committee, of the City of Bloomington, Indiana.**

Associated Sign & Post, Inc.,
Petitioner-Appellant,

City of Bloomington,
Respondent-Appellee,

Hall Signs, Inc., Intervenor.

No. 1–285A48.

Court of Appeals of Indiana,
First District.

Nov. 26, 1985.

David Rogers, Rogers, McDonald & Jones, Bloomington, for petitioner-appellant.

Linda Runkle, City Atty., City of Bloomington, Bloomington, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Associated Sign & Post, Inc. (Associated), appeals from the judgment of the Monroe Circuit Court denying its appeal from a decision of the Bloomington Human Rights Commission's Contract Compliance Committee. That decision upheld a finding by the contract compliance officer that a bid submitted by Associated was unacceptable because it failed to include an adequate affirmative action proposal as required by the commission's rules. We affirm.

## FACTS

In August 1984, the Bloomington Board of Public Works published notices soliciting sealed bids for various traffic control signs, sign posts, street name sign brackets, and related materials. As required by the Contract Compliance Regulations of the Bloomington Human Rights Commission, these notices also included the following statement:

"Each bidder must submit a written Affirmative Action Program by the bidding deadline. Each bidder must insure that all employees and applicants for employment are not discriminated against because of any race, religion, color, sex, national origin, age, ancestry or because of any disadvantages or handicaps. All of the preceding protected classes must be included in your Affirmative Action Plan in order to be acceptable. In addition to other requirements, your plan MUST include a workforce breakdown, an internal grievance procedure and the appointment of someone with responsibility and authority to implement the plan,

recruitment from minorities, equal access and training programs, a non-retaliation statement, and how the policy is communicated.

"You are advised to submit your plan separate from the sealed bid. The Contract Compliance Officer for the City of Bloomington is Ann Vaughan. The Board strongly suggests each bidder review his or her Affirmative Action Plan with Ms. Vaughn well in advance of the bidding deadline."

Record at 18. The deadline for submitting bids was August 21, 1984.

Four bids were submitted to the Board of Public Works. Associated's bid of $169,457.56 was the lowest bid considered by the board.[1] The affirmative action proposal submitted with its bid, however, substantially failed to meet the requirements for such a plan. Consequently, the Contract Compliance Officer found Associated's bid to be unacceptable.

On August 31, 1984, Associated amended its proposal to meet the requirements for an acceptable affirmative action plan. Nevertheless, the Contract Compliance Committee of the Bloomington Human Rights Commission failed to overturn the Contract Compliance Officer's original finding of unacceptability when it considered Associated's appeal of that determination on October 16, 1984. Subsequently, the Board of Public Works awarded the contract to Hall Signs, Inc., the second lowest bidder with a bid of $181,791.55.

On October 26, 1984, Associated filed its petition in the Monroe Circuit Court challenging the adverse determination of the contract Compliance Committee. Following a hearing, the trial court entered special findings of fact and conclusions of law denying Associated's petition. Associated subsequently perfected the present appeal.

## ISSUES

The parties raise essentially two issues for our consideration.[2] Rephrased, they are as follows:

1. Whether the Bloomington Human Rights Commission has the authority to promulgate rules and regulations requiring bidders seeking to contract with the city to submit an acceptable affirmative action proposal prior to the deadline for submitting bids.

2. Whether a contractor's failure to submit an acceptable affirmative action proposal with his bid justifies the rejection of that bid.

## DISCUSSION AND DECISION

*Issue One*

Associated initially argues that the Bloomington Human Rights Commission's Contract Compliance Regulations dealing with the submission of affirmative action proposals by bidders are invalid. Specifically, it avers, Bloomington, Ind., Municipal Code 2.21.070 (1983), requires only that bidders seeking contracts with the city submit a written affirmative action proposal to the Human Rights Commission, *"which proposal must be approved prior to entering a contract with the City."* (Emphasis added.) No proposal need be finally approved then until the contract is actually awarded according to Associated's interpretation of the ordinance. Consequently, Associated's argument concludes, the Contract Compliance Committee's regulation which requires submission of an acceptable affirmative action proposal prior to the deadline for receiving bids invalidly exceeds the scope of the power delegated to the administrative agency by Municipal Code 2.21.070 and its related provisions. We cannot agree.

It has long been the policy of this state to ensure the protection of its citizens' civil

---

1. One of the four bids submitted was for $146,232.55. That bid was disregarded however on the advice of the board's consulting engineers.

2. The parties also debate whether or not the Contract Compliance Committee acted in an arbitrary or capricious manner when it found Associated's bid to be unacceptable. However, as is demonstrated by the briefs of both parties, this issue is subsumed in the two issues we will discuss.

rights. Indiana Code section 22–9–1–2 (Burns Supp.1985), expresses that policy in the clearest possible terms when it states:

"(a) It is the public policy of the state of Indiana to provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations and acquisition through purchase or rental of real property including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, handicap, national origin or ancestry, since such segregation is an impediment to equal opportunity. Equal education and employment opportunities for acquisition of real property are hereby declared to be civil rights.

"(b) The practice of denying these rights to properly qualified persons by reason of race, religion, color, sex, handicap, national origin or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of this state and shall be considered as discriminatory practices. The promotion of equal opportunity without regard to race, religion, color, sex, handicap, national origin or ancestry through reasonable methods is the purpose of this chapter.

"(c) It is also the public policy of this state to protect employers, labor organizations, employment agencies, property owners, real estate brokers, builders and lending institutions from unfounded charges of discrimination.

. . . .

"(e) This chapter shall be construed broadly to effectuate its purpose."

The legislative origins of this policy lie in the Indiana Fair Employment Act first enacted in 1961. In 1963, the scope of the act was significantly broadened and it was appropriately renamed the Indiana Civil Rights Act. Though frequently amended since that time, its basic principles remain the same.

The legislature also has provided a mechanism by which local governmental units can implement the state's civil rights policy. Indiana Code section 22–9–1–12.1 (Burns Supp.1985), sets out the basic framework of this mechanism. That provision states in relevant part:

"(b) Any city, town, or county is hereby authorized to enact an ordinance or ordinances, which may include establishment or designation of an appropriate local commission, office, or agency to effectuate within its territorial jurisdiction the public policy of the state as declared in section 2 [22–9–1–2] of this chapter without conflict with any of the provisions of this chapter. Any city or town may enact such an ordinance or ordinances jointly with any other city or town located in the same country, or jointly with that county. The board of commissioners of each county is also authorized to enact ordinances in accordance with this section. An agency established or designated under this section has no jurisdiction over the state or any of its agencies.

"(c) An ordinance enacted under this section may grant to the local agency the power to:

(1) Investigate, conciliate and hear complaints;

(2) Subpoena and compel the attendance of witnesses or production of pertinent documents and records;

(3) Administer oaths;

(4) Examine witnesses;

(5) Appoint hearing examiners or panels;

(6) Make findings and recommendations;

(7) Issue cease and desist orders or orders requiring remedial action;

(8) Order payment of action damages, except that damages to be paid as a result of discriminatory practices relating to employment shall be limited to lost wages, salaries, commissions or fringe benefits;

(9) Institute actions for appropriate legal or equitable relief in a circuit or superior court;

(10) Employ an executive director and other staff personnel;

(11) Adopt rules and regulations;

(12) Initiate complaints, except that no person who initiates a complaint may participate as a member of the agency in the hearing or disposition of the complaint; and

(13) Conduct programs and activities to carry out the public policy of the state, as provided, in section 2 [22–9–1–2] of this chapter, within the territorial boundaries of a local agency.

. . . .

"(e) A decision of the local agency may be appealed under the terms of IC 4–22–1 [4–22–1–1—4–22–1–30] the same as if it was a decision of a state agency."

Pursuant to this statutory mechanism, the City of Bloomington created the Bloomington Human Rights Commission. It also enacted ordinances delineating specific powers and duties of the commission. One such ordinance provides in relevant part:

"*Affirmative Action by City Contractors.* All Contractors doing business with the City, except those specifically exempted by regulations promulgated by the Human Rights Commission and approved by the common council shall take affirmative action to insure that applicants are employed and that employees are treated during employment in a manner which provides equal employment opportunity and tends to eliminate inequality based upon religion, race, color, sex, national origin, ancestry or handicap. Affirmative action shall include but not be limited to the issuance of a statement of policy regarding equal employment and its communication to all personnel involved in recruitment, hiring, training, assignment, and promotion, notification of all employment sources of company policy and active efforts to review the qualifications of all applicants regardless of race, religion, color, sex, national origin, ancestry or handicap; recruiting in the minority group community for employees; and establishing an internal system of reporting concerning equal employment, recruiting, hiring, training, upgrading and the like.

"*Each such contractor shall submit to the Human Rights Commission a written proposal concerning the affirmative action it proposes to take, which proposal must be approved prior to its entering a contract with the City.* Said proposal shall be limited to measures similar to those which the City is required to take in its affirmative action with regard to its own employees, as established by the Mayor's office and as specified by resolution of the Common Council. [Emphasis added.]"

Bloomington, Ind., Municipal Code 2.21.070 (1983). The city also gave the Human Rights Commission the power to implement this ordinance's objectives. Bloomington, Ind., Municipal Code 2.21.060 (1983) states in part:

"*Rules and regulations.* The Commission may adopt rules and regulations, both procedural and substantive, to effectuate the purpose of this chapter and to make more specific the procedures deemed necessary for orderly and equitable compliance with this section."

It is the rules and regulations promulgated by the Bloomington Human Rights Commission pursuant to these ordinances which Associated challenges here.

The Contract Compliance Regulations of the Bloomington Human Rights Commission set out specific procedures to be followed by bidding contractors in submitting affirmative action proposals. Those regulations require in part:

"(B) *Submission of Plans*

All those persons who bid on City contracts reasonably expected to be covered by sec. 2.1(A) of these regulations shall be required to submit, *along with their bid* and *prior to* the end of the bidding time limit, an affirmative action plan describing in detail the good faith efforts they intend to make, as well as the efforts they have already made, to comply with the 'Equal Opportunity' provision of the contract including but not being limited to affirmative action and goals and

timetables regarding any future affirmative action. [Emphasis in original.]" Contract Compliance Regulations of the Bloomington Human Rights Commission, Rule 4, sec. 4.1(B). Should the Contract Compliance Officer determine that the proposal submitted is unacceptable, he must make written findings stating the reasons for that decision.[3] In such event, the aggrieved bidder may appeal the finding to the Contract Compliance Committee.[4] If that appeal is unsuccessful, the bidder may, pursuant to Ind.Code sec. 22–9–1–12.-1(e), seek judicial review in accordance with Indiana's Administrative Adjudication Act.[5] With this basic framework in mind, we turn to an examination of the specific challenge raised by Associated.

It would be difficult, if indeed not impossible, to imagine the efficient operation of any government without the aid of administrative agencies entrusted with broad authority to effectuate the legislature's will. 1 K. Davis, *Administrative Law Text* sec. 1.02 (3d. ed. 1972). However, all administrative agencies, including the Bloomington Human Rights Commission, are creatures of the legislative body which enacted their enabling legislation. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210, 1213; *Gallagher v. Marion County Victim Advocate Program, Inc.* (1980), Ind.App., 401 N.E.2d 1362, 1368, *trans. denied.* They may, therefore, promulgate only those rules and regulations which fall within the scope of that enabling legislation. *Van Allen,* at 1213; *Coleman v. Target Stores* (1983), Ind.App., 456 N.E.2d 723, 726 n. 1; *Shultz v. State* (1981), Ind.App., 417 N.E.2d 1127, 1136; *Gallagher,* at 1368. In

addition, an agency's rules must not be arbitrary or unreasonable. *Indiana Employment Security Division v. Ponder* (1950), 121 Ind.App. 51, 59, 92 N.E.2d 224, 228. Those rules and regulations must also be consistent and harmonious with the legislative pronouncement under which it operates. *United States v. Larinoff* (1977), 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48, 56; *Gross Income Tax Division v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 479–80, 109 N.E.2d 415, 423; *Ponder,* 121 Ind.App. at 59, 92 N.E.2d at 228. Finally, and perhaps most importantly for purposes of the present discussion, an administrative agency may not promulgate a rule which expands or varies the legislature's enactment. *Colpaert Realty Corp.,* 231 Ind. at 480, 109 N.E.2d at 423; *Ponder,* 121 Ind.App. at 59, 92 N.E.2d at 228. *See also* 1 F. Cooper, *State Administrative Law* pp. 250–63 (1965) (generally discussing the validity of administrative rules); 2 Am.Jur.2d *Administrative Law* sec. 300 (1962). Beyond these specific limitations, however, an administrative agency has the undoubted power to adopt rules and regulations which are necessary for it to perform the duties delegated to it by the legislature. *Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668, 688; *Colpaert Realty Corp.,* 231 Ind. at 479–80, 109 N.E.2d at 422. Clearly, this is what the Bloomington Human Rights Commission sought to do when it promulgated Rule 4.

■ The regulation attacked here by Associated falls squarely within the powers delegated to the Human Rights Commis-

---

**3.** Contract Compliance Regulations for the Bloomington Human Rights Commission, Rule 4, sec. 4.1(D), sets out the criteria a Contract Compliance Officer must use in reviewing the affirmative action proposals submitted by bidders. If the Contract Compliance Officer finds the proposal to be acceptable, that finding is forwarded to the city agency awarding the contract. The Contract Compliance Officer may also submit a written statement explaining why one acceptable proposal is superior to other acceptable proposals. Contract Compliance Regulations of the Bloomington Human Rights Commission, Rule 4, sec. 4.1(B).

**4.** The Contract Compliance Committee may overrule a finding of unacceptability by a simple majority vote. In this case, the committee vote was three in favor of overruling and three in favor of sustaining. According to procedural rules followed by the committee, the Contract Compliance Officer's finding of unacceptability was, therefore, sustained.

**5.** See specifically Indiana Code section 4–22–1–14 (Burns Supp.1985).

sion by the Bloomington City Council. Municipal Code 2.21.070. requires bidders seeking contracts with the city to first submit affirmative action proposals to the commission. In addition, Municipal Code 2.21.060 gives the commission broad authority to effectuate the city's civil rights policy of which Municipal Code 2.21.070 is an integral part. Section 4.1(B) of the commission's Rule 4 merely prescribes the procedures designed to ensure the fair and orderly administration of the city's clearly stated policy. It does not, as Associated argues, extend or vary the ordinance under which it was promulgated. Consequently, Associated's challenge must fail.

If we were to adopt Associated's position, the ordinance's mandate that affirmative action proposals be submitted to the Human Rights Commission would be a meaningless exercise. The procedure suggested by Associated, which would permit low bidders to negotiate affirmative action requirements with the city prior to the actual award, would instead permit unfair competition and invite claims of fraudulent bidding. This is hardly the kind of procedure for the letting of public contracts which the legislature contemplated.

*Issue Two*

In their briefs to this court, the parties also present argument on a second issue which the trial court appeared to assert as one of the grounds for its decision upholding the Contract Compliance Committee's finding of unacceptability. The committee urges that Associated's failure to comply with the affirmative action specifications in the invitation to bid justified rejection of the bid. Associated, on the other hand, asserts that its bid complied with all relevant and controlling ordinances and specifications. Therefore, it contends, the bid it submitted was the lowest responsible and responsive bid and entitled Associated to be awarded the contract. Prior to addressing these arguments, however, we are compelled to comment on an aspect of this case that neither party has mentioned.

Associated initiated this action against the Contract Compliance Committee of the Bloomington Human Rights Commission alone. The committee does not, strictly speaking, have the power to reject bids for public contracts. Rather, they make a finding of acceptability or unacceptability of a particular bidder's affirmative action plan. Contract Compliance Regulations of the Bloomington Human Rights Commission, Rule 4, sec. 4.1(C). That finding is then forwarded to the governmental body awarding the contract. It is that body which then determines the lowest responsible and responsive bidder pursuant to Indiana Code section 36–1–9–3 (Burns Supp. 1985). In this case, the body empowered to make that determination was the Board of Public Works. Associated did not however, name the board as a party to this action.[6] Nonetheless, we consider this issue because both parties have presented extensive arguments on it in their briefs and have treated the committee as the appropriate party. We note, in addition, that if the committee's arguments are correct the Board of Public Works not only had the authority to reject Associated's bid, it had a duty to do so.

■ The applicable statutory provision, Indiana Code section 36–1–9–3 (Burns Supp.1985), requires the governmental body which sought the bids to award the contract "... to the lowest responsible and responsive bidder...." Such a statute affords the awarding body wide discretion. *Budd v. Board of County Commissioners* (1939), 216 Ind. 35, 38, 22 N.E.2d 973, 975; *Ness v. Board of Commissioners* (1912), 178 Ind. 221, 235, 98 N.E. 1002, 1003, *on petition for rehearing; Boseker v. Board of Commissioners* (1882), 88 Ind. 267, 268; *Lee v. Browning* (1932), 96 Ind.App. 282, 284, 182 N.E. 550, 551 *trans. denied; Eigenmann v. Board of Commissioners* (1913), 53 Ind.App. 1, 3, 101 N.E. 38, 39; 64 Am.Jur.2d *Public Work and Contracts* sec. 67 (1972). Thus, this court will not substitute its judgment for that of the

---

**6.** We need not, and therefore do not, express any opinion as to whether the Board of Public Works could have been or should have been made a party.

awarding body. *Budd,* 216 Ind. at 38, 22 N.E.2d at 975; *Boseker,* 88 Ind. at 268; *Lee,* 96 Ind. at 284, 182 N.E. at 551. This court will reverse, rather, only where the challenged determination is clearly arbitrary, corrupt, or fraudulent. *School City of Gary v. Continental Electric Co.* (1971), 149 Ind.App. 416, 420, 273 N.E.2d 293, 297; *Haywood Publishing Co. v. West* (1942), 110 Ind.App. 568, 573–74, 39 N.E.2d 785, 787; 64 Am.Jur.2d at sec. 68. In light of these standards, we conclude that Associated's bid was properly subject to rejection by the board on two grounds.

▮ It appears clear from the record now before us, that the Board of Public Works could determine that Associated was not the lowest responsible bidder. As we pointed out above, the board is vested with wide discretion in determining which bidder has submitted the lowest responsible bid. The board may examine many factors when exercising that discretion. Over fifty years ago, this court delineated some of those factors which the board could consider when we stated:

"Aside from financial responsibility it has been held that ability and capacity, capital, character and reputation, competency and efficiency, energy, experience, facilities, faithfulness and fidelity, fraud or unfairness in previous conduct, honesty, judgment, promptness, quality of previous work, suitability to the particular task, are proper elements to be taken into consideration in determining the responsibility of a bidder on public contracts."

96 Ind. at 285–86, 182 N.E. at 551; *see also Budd,* 216 Ind. at 38, 22 N.E.2d at 975. Other jurisdictions have enunciated additional factors. *See* 1953 Op.Ind.Att'y.Gen. No. 24 (compiling a wide range of factors various jurisdictions have sanctioned for use in determining which are responsible bidders). We think that similar considerations which permit examination of these factors, justify examination of a bidder's affirmative action plans or proposals when determining who is the lowest responsible bid.[7] Neighboring jurisdictions, when presented with the same issue, have concluded that a contractor's ability to ensure compliance with anti-discriminatory laws and policies is reasonably part of the standard of a best or responsible bidder. In *S.N. Nielsen Co. v. Public Building Commission* (1980), 81 Ill.2d 290, 43 Ill.Dec. 40, 410 N.E.2d 40, the Illinois Supreme Court reasoned that Illinois' Fair Employment Practices Act indicated the legislature's intent that the social responsibility of a bidder should be considered when awarding public contracts.[8] *Id.* at 299, 410 N.E.2d at 44. The court concluded, therefore, a contractor's affirmative action efforts should be taken into account when determining whether a contractor is the lowest responsible bidder. The Ohio Supreme Court arrived at a similar conclusion in *Weiner v. Cuyahoga Community College District* (1969), 19 Ohio St.2d 35, 249 N.E.2d 907, *cert. denied* 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970). There, the lowest bidder promised only that it would make every effort to hire blacks for the public construction project. The second low bidder, however, assured the governmental agency that it would in fact have blacks employed on the project. In its opinion, the court sanctioned the award of the contract to the second low bidder stating:

"We conclude that the capacity to assure a performance which complies with anti-discrimination laws is reasonably a part of the standard of a best or responsible

---

**7.** In arriving at this conclusion, we are not unaware of *School City of Gary v. Continental Electric Co.* (1971), 149 Ind.App. 416, 273 N.E.2d 293. There, this court stated: "Yet the evaluation of affirmative action programs cannot become the *sole* determinant of a 'lowest and best' bid for public construction work." *Id.* at 424, 273 N.E.2d at 299. That case, however, must be read in light of its peculiar facts which would lead any rational reader to the conclusion that the contract had been awarded on an arbitrary, corrupt, or fraudulent basis.

**8.** The Illinois Fair Employment Practices Act, Ill.Rev.Stat. ch. 68, par. 105(A)(1) (1979 Supp.), is very similar to Indiana's Civil Rights Act, Indiana Code section 22–9–1–2 (Burns Supp. 1985).

bidder on a contract involving the expenditure of public funds. Accordingly, a bidder for a construction contract to be awarded by a public body of this state may be required to assure, by appropriate promises contained in contract provisions or related instruments, nondiscrimination in employment in the entire performance of the contract."

*Id.* at 39, 249 N.E.2d at 910. We think the rational underlying these cases is persuasive. Thus, we conclude that the Board of Public Works could have properly determined that Associated was not the lowest responsible bidder. Had the board determined Associated to be the lowest responsible bidder, however, it would have still been required to reject the bid.

■ Bids submitted for public contracts must substantially conform to the specifications contained in the invitation to bid. *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill.App.3d 340, 344, 52 Ill.Dec. 869, 422 N.E.2d 1078, 1082; 64 Am.Jur.2d at sec. 58. While minor variances from the specifications will not necessarily render the bid invalid, a material variance requires its rejection. 64 Am.Jur.2d at sec. 58. *See also Wickwire v. City of Elkhart* (1895), 144 Ind. 305, 309–10, 43 N.E.2d 216, 218. A variance is material when it affords one bidder a substantial advantage not available to other bidders. *Leo Michuda & Son,* 97 Ill.App.3d at 344, 52 Ill.Dec. at 873, 422 N.E.2d at 1082. Such a variance destroys the competitive character of the bidding process hence mandating disqualification of the offending bid. 64 Am.Jur.2d at sec. 59. Finally, and of particular importance here, a bid which contains a material variance cannot be later amended to cure the disqualifying defect. *Leo Michuda & Son,* at 344, 52 Ill.Dec. at 873, 422 N.E.2d at 1082. It is merely an unresponsive bid which must be rejected by the awarding governmental authority.

■ The invitation to bid issued by the Board of Public Works clearly required the submission of a detailed affirmative action plan prior to the deadline for accepting bids. Associated, nonetheless, made only

an inept attempt to comply with that requirement submitting a clearly unacceptable proposal. Such a variance from the invitation was not minor. Rather, it gave Associated a substantial advantage over both those who were deterred from bidding because of the costs of complying with affirmative action requirements and those who actually expended time and money in an effort to meet the invitation's affirmative action specifications. *See Impac, Inc. v. City of Paterson* (1981), 178 N.J.Super 195, 203–04, 428 A.2d 553, 558 (setting out this principal in a factual situation very similar to the one with which we are confronted). *See also Rossetti Contracting Co., Inc. v. Brennan* (7th Cir. 1975), 508 F.2d 1039, 1045 (failure to comply with bid specifications relating to affirmative action was not a minor variance). *Leo Michuda & Son,* 97 Ill.App.3d at 344–45, 52 Ill.Dec. at 873, 422 N.E.2d at 1082. Additionally, Associated's subsequent attempt to comply with the bid specifications is of no moment. *Rossetti Contracting Co.,* at 1045; *Leo Michuda & Son,* 97 Ill.App.3d at 344, 52 Ill.Dec. at 873, 422 N.E.2d at 1082. Its failure to meet those affirmative action specifications in the first instance destroyed the competitive character of the bid. Therefore, the Board of Public Works would have been required, as a matter of law, to reject Associated's bid as unresponsive.

The judgment of the trial court is affirmed.

NEAL, J., and ROBERTSON, J., concur.