STATE EX REL. *v.* MORGAN SUPERIOR COURT, LITTELL, JUDGE.

[No. 1167S120.  Filed December 7, 1967.]

*John J. Dillon*, Attorney General, for relators.

*Noble K. Littell, pro se.*

PER CURIAM.—This matter arose by way of a petition for a writ of prohibition on the part of the relators filed with this court on the 6th of November, 1967. On November 4, 1967, Ralph M. Lett as plaintiff filed in the respondent court his complaint for an injunction which was duly granted without notice by the respondent on the said 4th of November, 1967, enjoining the relators from calling up or mustering the Indiana National Guard. The petition further alleged that the Governor of the State of Indiana was in possession of information from which he had determined there was imminent danger of one or more riots in the city of Gary during the city election to be held the 7th of November, 1967. For this reason one of the relators, John S. Anderson, Adjutant General of the State of Indiana, was ordered to assemble units of the Indiana National Guard at convenient points in proximity to said city to be held in readiness for use in event a riot or riots occur which cannot be suppressed by the available civil authorities in the area. On November 6, 1967, a temporary writ of prohibition was issued by this court after oral argument in which attorney John J. Dillon appeared for the relators and Noble K. Littell appeared on his own behalf. Since then the election has been held and the matter made moot.

It is the law of this state that when a cause becomes moot the court will not retain jurisdiction to decide incidental questions. "West's Ind. Law Encyclopedia, *Appeals* Chap. 11, § 419, p. 293."

However, in the case of *Gardner, as Auditor, etc.* v. *Grills,* (1961) 242 Ind. 29, 175 N.E. 2d 696, this court held that an appeal will be dismissed when it presents only a moot question unless it involves a matter of great public interest or one effecting the public generally.

Conversely, this action although moot, does involve matters of great public interest and one which could well effect the public generally.

The constitution of the State of Indiana specifically cites the division of the powers of the government, the executive power of the state and the judicial power of the state. The pertinent sections are the following:

"The Powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Art. 3, § 1, Ind. Const.

"The executive power of the State shall be vested in a Governor. . . ." Art. 5, § 1, Ind. Const.

"The Governor shall be commander-in-chief of the military and naval forces and may call out such forces, to execute the laws, or to suppress insurrection or to repeal invasion." Art. 5, § 12, Ind. Const.

"The militia shall consist of all ablebodied male persons, between the ages of eighteen and forty-five years, except such as may be exempted by the laws of the United States, or of this state; and shall be organized, officered, armed, equipped, and trained, in such manner as may be provided by law." Art. 12, § 1, Ind. Const.

"The Governor shall appoint the Adjutant, Quartermaster and Commissary Generals." Art. 12, § 2, Ind. Const.

"All militia officers shall be commissioned by the Governor, and shall hold their offices not longer than six years." Art. 12, § 3, Ind. Const.

"The General Assembly shall determine the method of dividing the militia into divisions, brigades, regiments, battalions and companies, and fix the rank of all staff officers." Art. 12, § 4, Ind. Const.

"The militia may be divided into classes of sedentary and active militia, in such manner as shall be prescribed by law." Art. 12, § 5, Ind. Const.

"The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish." Art. 7, § 1, Ind. Const.

Moreover Burns' Ind. Stat. Ann. § 45-2104 reads as follows:

"It shall be the duty of the governor and he is authorized and *required*, in case of war, invasion, insurrection, public disaster, or *breach of the peace or imminent danger thereof, or any forcible obstructing of the execution of the laws or reasonable apprehension thereof*, and at all other times he may deem necessary, to order on state duty the National Guard or any part thereof. No member thereof who shall be ordered out for such duty shall be liable for civil prosecution for any act done by him in the discharge of his military duty on such occasion. . . ." (Emphasis added.) Ind. Acts 1953, ch. 187, § 404, Burns' § 45-2104.

The last quoted section defining the Governor's duty to call out the National Guard is followed by a section (Burns' § 45-2106) which authorizes commanding officers of the Guard to call out his troops when it is impossible to communicate with the Governor or Adjutant General. Then follow several sections dealing with how the guard operates in quelling riots and other functions and finally comes Burns' § 45-2116, the re-enactment of the 1895 prohibition against muster, etc. on election days, which ends with the clause, "if any officer shall order any such muster or assembly, he shall forfeit such amount as a court-martial may adjudge."

It becomes quite clear from the context in which the legislative prohibition against election day assemblies (Burns' § 45-2116) appears that it is intended to apply only to officers [who are defined by Ind. Acts 1953, ch. 187, § 102, as amended by Ind. Acts 1963, ch. 226, § 1, Burns' § 45-1802, as "commissioned officer[s], including warrant officer[s], in the armed forces of the state of Indiana"] and not to the Governor.

Any interpretation of Burns' § 45-2116 which made it apply to the Governor would make the statute an attempt by the Legislature to limit the power given to the Governor by ■ Article 5, § 12 of the Indiana Constitution, quoted *supra,* which confers on the Governor the power and discretion to "call out such forces [military and naval forces], to execute the laws, or to suppress insurrection, or to repel invasion."

Such an attempted infringement by the legislative branch of the government on the constitutional power of the executive would be repugnant to the doctrine of separation of powers as stated in Article 3, § 1, of the Indiana Constitution, quoted *supra. Tucker* v. *State,* 218 Ind. 614, 35 N.E. 2d 270, (1941).

The same may also be said of any attempt by the courts to infringe on the Governor's executive power. The power, the duty, and the discretion to manage the military forces ■ of the state are given to the Governor by the Constitution and not to the courts. What was said in *Tucker* v. *State, supra,* on page 681 of 218 Ind. concerning management of state property has equal force and logic with respect to management or command of the national guard.

> "The management of the state's property is an executive function. The General Assembly may legislate concerning the state's property, the courts may adjudicate concerning it, but the Governor, vested with the executive power, must manage the state's property."

Since the courts have seldom attempted to interfere with the Governor's exercise of his executive duty, little has been said about such usurpation. Since the opinion of the Supreme Court of Indiana in *Hovey, Governor* v. *The State, ex rel. Schuck,* 127 Ind. 588, 27 N.E. 175, 22 Am. St. Rep. 663, 11 L.R.A. 763 (1891), seldom has need been found to say again, about injunctions against the Governor, what the Court there said about mandates to the Governor. The following from that opinion, beginning on page 598 of 127 Ind. is still (and always has been) the law in Indiana:

"Our State Constitution, article 3, section 1, is as follows:

" 'The powers of the government are divided into three separate departments; the legislative, the executive including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided.'

"This provision does not differ materially, in legal effect, from the provision above copied from the Constitution of the State of Tennessee. Under this provision of our Constitution, above quoted, it has been said by this court that the powers of the three departments of State are not merely equal, they are exclusive in respect to the duties assigned to each. They are absolutely independent of each other. They are equal, coordinate, and independent. This division of power prevents the concentration of power in the hands of one person, or class of persons. *Wright* v. *Defrees,* 8 Ind. 298; *Lafayette, etc., R.R. Co.* v. *Geiger,* 34 Ind. 185; *State ex rel.* v. *Denny,* 118 Ind. 382; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426; *State, ex rel.* v. *Denny,* 118 Ind. 449; *State, ex rel.* v. *Noble,* 118 Ind. 350.

"In the last case cited it was held that neither the legislative nor the executive departments of the State could interfere with the duties, or functions, of this court.

"It is true that the legislative department may increase, or diminish, the jurisdiction of the court, and may, within the terms of the Constitution, prescribe rules of practice. It is within the province of the courts to expound and enforce such laws as the legislative department may enact within the constitutional limit, and to decline to enforce such as are in conflict with the Constitution. It is within the province of the executive department of the state to discharge such duties as are imposed upon it by the Constitution of the State, and such as may be imposed by valid enactments of the legislative department. In each of these cases the department acting, or declining to act, is within its legitimate sphere; and if either department fails to perform its duty the remedy is not to be found in the attempt of some other department to perform such duties.

"Such attempt would be usurpation, more dangerous to free government than the evil sought to be corrected. Should we attempt to control the Governor in the matter of the discharge of any of the duties pertaining to his office as Governor, we would be taking one step in the direction of absorbing the functions of the executive department of the

State. This we should not do, unless the case before us is such that we are driven to such course by an unbroken chain of precedents, in like cases, from which there is no escape.

.   .   .

"We think the Governor's decision in this matter must be taken as final. The case is not one where the Governor is acting as the member of a board created by legislative enactment, in a matter wholly disconnected with his functions as Governor of the State; but it is a case where he is required to act as Governor. It is his office, as chief executive of the State, that gives force and vitality to the commission. He executes it as the Governor of the State of Indiana; and whether he derives his power to do so from the Constitution of the State, or by legislative enactment, without the office of chief executive behind it, it is of no validity.

"Having reached the conclusion that the courts of this State have no power to control the Governor in matters of the kind before us, and that the conclusion of the Governor in the particular here involved is final, it follows that the Circuit Court erred in overruling the demurrer of the appellant to the replies, and in sustaining it to the answers."

In the case of *Ellingham, Secretary of State, et al* v. *Dye,* (1912), 178 Ind. 336, 99 N.E. 1 the court upheld an injunction against the State Election Board which included the governor. In this case the court indicated there is no distinction in "jurisdiction to mandate" and "jurisdiction to enjoin" quoting 5 Pomeroy, Eq. Jurisp. § 328.

(" 'An injunction will not issue against an executive officer of the government, nor against one acting under him, to restrain the performance or execution of administrative acts and orders within the scope of his authority. This is based upon the principle which governs also the legal remedy of mandamus. It would be contrary to our theory of government for the judicial department to interfere with the reasonable discretion of the executive. Hence, courts of law and of equity refuse the remedies of mandamus and injunction when they will have the effect of controlling a reasonable discretion. Where no question of discretion is involved, both law and equity will interfere without hesitation. It is generally stated that mandamus may issue in a proper case to compel the performance of a minis-

terial act. The corresponding statement as to injunction is that it may issue in a proper case to restrain an act in excess of the officer's authority.' ")

While there is no reported decision of any Indiana court having passed upon the power of a court of equity to enjoin the Governor from calling out the Guard, a three-judge United States District Court sitting in the Southern District of Indiana has. In *Cox* v. *McNutt*, 12 Fed. Supp. 355, at 358, that court said:

"It cannot be controverted that the Governor has wide discretion in determining whether or not an exigency requires the use of the military forces. It is also a question to be determined by him as to whether there exists a riot, a tumult, a mob, or an insurrection, or whether there is danger thereof. United States v. Wolters et al. (D.C.) 268 F. 69. If the Governor determines that an exigency requires the use of the military forces, then, in his discretion, he has authority to call out such forces, and the courts will not interfere therewith. The Supreme Court, in the recent case of Sterling, Governor et al., v. Constantin, 287 U.S. 378, 53 S. Ct. 190, 196, 77 L.Ed. 375, has stated the law to be as follows: 'By virtue of his duty to "cause the laws to be faithfully executed," the executive is appropriately vested with the discretion to determine whether an exigency requiring military aid for that purpose has arisen. His decision to that effect is conclusive. That construction, this Court has said, in speaking of the power constitutionally conferred by the Congress upon the President to call the militia into actual service, "necessarily results from the nature of the power itself, and from the manifest object contemplated." The power "is to be exercised upon sudden emergencies, upon great occasions of state, and under circumstances which may be vital to the existence of the Union." Martin v. Mott, 12 Wheat. 19, 29, 30, 6 L. Ed. 537. Similar effect, for corresponding reasons, is ascribed to the exercise by the Governor of a state of his discretion in calling out its military forces to suppress insurrection and disorder. Luther v. Borden, 7 How. 1, 45, 12 L. Ed. 581; Moyer v. Peabody, 212 U. S. 78, 83, 29 S. Ct. 235, 236, 53 L. Ed. 410. The nature of the power also necessarily implies that there is a permitted range of honest judgment as to the measures to be taken in meeting force with force, in suppressing violence and restoring order, for, without such

liberty to make immediate decisions, the power itself would be useless. Such measures, conceived in good faith, in the face of the emergency, and directly related to the quelling of the disorder or the prevention of its continuance, fall within the discretion of the executive in the exercise of his authority to maintain peace.'

"It is perhaps not necessary to examine the evidence to determine the situation at the time of the issuance of the proclamation under attack, since, under the law, the Governor is 'to determine whether an exigency requiring military aid has arisen.' "

The alternative writ heretofore issued by the court on the 6th day of November 1967 is now made permanent.

Judge Arterburn, concurs in result.

NOTE.—Reported in 231 N. E. 2d 516.