**MID–AMERICA MARKETING, INC.,
Plaintiff-Appellant,**

v.

**FALENDER DEVELOPMENT CORP.,
Defendant-Appellee.**

**No. 1–280A50.**

Court of Appeals of Indiana,
First District.

July 3, 1980.

---

Stephen W. Terry, Jr., Lewis D. Beckwith, Ralph F. Hall, Baker & Daniels, Indianapolis, John W. Donaldson, Donaldson & Andreoli, Lebanon, for plaintiff-appellant.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, Stephen E. Plopper, Klineman, Rose & Wolf, Indianapolis, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Boone Circuit Court refused to issue a preliminary injunction enjoining defendant-appellee Falender Development Corp.

(Falender) from coming upon, interfering with, or trespassing upon property of plaintiff-appellant Mid-America Marketing, Inc. (Mid-America).

## FACTS

Mid-America and Falender own adjacent tracts of real estate in Boone County, Indiana. Mid-America's 3.16 acres lie east of Ford Road, and Falender's 105 acres border on the west side of Ford Road. Falender's tract is within the corporate limits of the Town of Zionsville, but Mid-America's property is not within Zionsville.

Falender is developing its property into a subdivision to be known as VillageWalk. At the time of the hearing, Falender had cleared land for approximately seventy-four of the planned two hundred lots. Mid-America has tentative plans for the construction of multi-family residences on its property, but Mid-America has not gained approval from Boone County authorities for its plans.

Before Falender started its work, a nineteen-inch ribbed concrete drainpipe, buried four to five feet beneath the ground, passed through Falender's property from west to east. The drain, which passed under Ford Road and through Mid-America's property, emptied into a ditch located near a railroad track east of Mid-America's property.

In developing its real estate, Falender removed this drain (Saylor drain) from its tract. Falender incorporated into its storm sewer system the water which Saylor drain previously transported through Falender's property. The storm sewers empty into a 1.89 acre pond which is approximately twenty feet deep. This pond is located at the east side of Falender's property, beside Ford Road, near Mid-America's tract.

If the water exceeds pool level of the pond, water will leave the pond through a forty-two inch outlet pipe which empties into one hundred square yards of hand-laid stones (riprap). A thirty-foot-wide ramp will also carry water from the pond to the riprap if a severe storm should cause the level of the pond to rise more than five feet above pool stage. The water will leave Falender's property by way of a culvert which will pass under Ford Road. The culvert, which is 8¾ feet wide and 3½ feet high, had not yet been installed at the time of the hearing, but the pond was nearly completed.[1]

Falender's plans call for Falender to do certain drainage work on Mid-America's land. Even before Falender commenced development of its real estate, surface water occasionally crossed Ford Road and proceeded across Mid-America's property. Falender's plans provide for the removal of a sufficient amount of soil, ranging from approximately one foot to two and one half feet in depth, to provide a channel approximately eighteen feet in width extending eastward from the culvert for one hundred sixty feet. In this way the water passing through the culvert would be channeled in a direction so that it would meet the existing path of surface water over Mid-America's land.

The Saylor drain, which is located approximately fifty feet north of the proposed location for the culvert, will continue to drain water from Mid-America's property. The channel which Falender seeks would be located within seventy-five feet of the Saylor drain.

The Boone County Drainage Board transferred jurisdiction of the entire Saylor drain to the Town of Zionsville, and Zionsville accepted jurisdiction of the entire drain. The Town of Zionsville approved Falender's plans for VillageWalk and notified Mid-America that Falender, as an agent of the town, would be entering Mid-America's property for the purpose of digging the channel. Mid-America sought an injunction to prevent Falender's interfer-

---

1. In summary, Falender's drainage plans result in (a) the collection in the pond of all water which enters Falender's property from the west by way of the Saylor drain and the surface, (b) the addition of all surface water from Falen-der's 105 acres, and (c) the routing of that water through the 42-inch pipe and down the ramp, over the riprap, through the culvert, and onto Mid-America's property.

ence with Mid-America's land. After conducting a hearing, the Boone Circuit Court denied the request for a preliminary injunction.

### ISSUES

1. Does the Boone County Drainage Board have authority to surrender to the Town of Zionsville jurisdiction of that portion of Saylor drain which is not within the Town of Zionsville?

2. Can Falender perform the proposed work on Mid-America's property without following statutory procedures for reconstructing a drain so long as the work is done within the area over which a right of entry exists?

3. Did the trial court abuse its discretion in refusing to issue a preliminary injunction?

### DECISION

*Issue One*

■ By terms of the Indiana Drainage Code, the Boone County Drainage Board has jurisdiction of the Saylor drain. IC 1971, 19-4-1-3 (Burns Code Ed.) and IC 1971, 19-4-5-1 (Burns Code Ed.).[2]

IC 1971, 19-4-1-3.5 (Burns Code Ed.) provides:

"County drainage boards may, by resolution, relinquish their jurisdiction over ditches and drains located within a city, town, or sanitary district, if said jurisdiction is accepted by the city, town, or sanitary district."

The Boone County Drainage Board relinquished, and the Town of Zionsville accepted, jurisdiction of not only that portion of Saylor drain which is located within the Town of Zionsville but also that portion of Saylor drain which is outside of Zionsville.

When the words are given their plain and common meanings, IC 19-4-1-3.5 cannot serve as authority for such a transfer of jurisdiction. Saylor drain is not within the Town of Zionsville when it passes through Mid-America's property. IC 19-4-1-3.5 does not authorize the transfer to a town of jurisdiction of drains located outside of the town. Falender's reliance upon IC 19-4-1-3.5 is misplaced.

Falender emphasizes the advantages of vesting in one particular board authority to control the entire drain. We appreciate that fact, but IC 19-4-1-3.5 is not broad enough to accomplish what was attempted in the present situation. If jurisdiction of the Saylor drain is to be possessed by a single board, that board will have to be the Boone County Drainage Board.

We hold that IC 19-4-1-3.5 applies only to the factual situation of a ditch or drain which is located *within* the town, city, or sanitary district. The trial court erred in concluding that the attempted transfer of jurisdiction was valid as it related to that portion of Saylor drain which is located outside of Zionsville.

*Issue Two*

■ Falender insists that Mid-America cannot rightfully oppose the digging of the proposed channel because the channel will be within the area over which a right of entry is established by IC 1971, 19-4-6-1 (Burns Code Ed.).[3]

2. The parties agree that Saylor drain is a legal drain. The Indiana Drainage Code applies to all legal drains except for certain drains described in IC 1971, 19-4-5 (Burns Code Ed.).

3. IC 19-4-6-1 provides:

"The surveyor, or the board, or any duly authorized representative of either the surveyor or the board, in the performance of any duty required or permitted under the provisions of this act [19-4-1-1—19-4-10-5], shall have the right of entry over and upon lands lying within seventy-five [75] feet of any legal drain, the seventy-five [75] feet to be measured at right angles to the center line

of any legal tile ditch, and to be measured at right angles from the existing top edge of each bank of a legal open ditch as determined by the surveyor. Spoil bank spreading resulting from an improvement to a legal open ditch may extend beyond said seventy-five [75] foot right-of-way if in the opinion of the surveyor the same is necessary and provision has been made in the engineers report therefor prior to the hearing thereon. All persons exercising the right given by this section shall use due care to avoid damage to crops, fences, buildings and other structures outside of the right-of-way, and to crops and ap-

IC 1971, 19–4–1–10 (Burns Code Ed.) lists the various classifications for legal drains: (1) drains in need of reconstruction, (2) drains in need of periodic maintenance, and (3) drains which should be vacated. IC 19–4–1–10(b) reads as follows:

"(b) A legal drain is in need of reconstruction when it will not perform the function for which it was designed and constructed, or when topographical or other changes have rendered the drain inadequate to properly drain the lands affected, without extensive repairs or changes being made thereto. * * *"

IC 19–4–1–10(c) provides:

"(c) A legal drain is in need of periodic maintenance when, by periodically cleaning out, spraying, removing obstructions, and making minor repairs, the drain will perform the function for which it was designed and constructed and will be adequate to properly drain all lands affected thereby under existing conditions."

The plans of Falender leave the Saylor drain completely undisturbed on Mid-America's property. The Saylor drain will continue to receive water from Mid-America's land and transport that water to the ditch located east of Mid-America's property. The proposed channel would carry all of the water which would be fed onto Mid-America's land through the culvert to be placed under Ford Road. Falender's plans appear to call for the reconstruction of the Saylor drain.

IC 1971, 19–4–3 (Burns Code Ed.) sets forth the procedure for reconstruction of a drain. That statutory scheme includes no-

tice to the land owners who will be affected by the proposed improvements, an opportunity to file objections, a hearing before the drainage board, and a definite determination of the damages which will be caused by the improvements and the assessments which will be imposed for the improvements.

The fact that the reconstruction will be accomplished within the area over which the drainage board has a right of entry does not eliminate the need to follow prescribed statutory procedures. Although Falender plans to pay for the cost of reconstruction, Mid-America has been denied opportunity to file objections, to participate in a hearing, and to receive a determination by the drainage board concerning the utility of the reconstruction and the damages which will be caused Mid-America. If Mid-America's objections were heard by the drainage board, there is a possibility that the channel would not be dug; or if the channel were dug, damages could be finally determined without resort to a proceeding other than the proceeding prescribed by the Indiana Drainage Code.

Falender has cited no authority for its proposition that the statutory procedure may be disregarded so long as the proposed work is accomplished within the area over which the drainage board retains a right of entry. Whether Falender's proposal is for reconstruction,[4] maintenance,[5] or construction of a new drain,[6] a specific procedure set forth in the Indiana Drainage Code must be followed.

---

proved structures inside the right-of-way insofar as possible.

The owners of lands over which the right-of-way runs may use such land in any manner not inconsistent with the proper operation of the drain and the provisions of this act. Permanent structures may not be placed on any right-of-way unless the written consent of the board is first obtained. Temporary structures may be placed upon or over such right-of-way without the written consent of the board, but shall be removed immediately by the landowner when so ordered by the board or by the surveyor. Crops grown on a right-of-way are at the risk of the landowner, and if necessary in the

reconstruction or maintenance of the drain may be damaged or destroyed without liability on the part of the surveyor, the board, or their representatives. Trees, shrubs, and woody vegetation may not be planted in the right-of-way, except by express written consent of the board, and existing trees and shrubs may be removed by the surveyor if necessary to the proper operation or maintenance of the drain."

4. IC 1971, 19–4–3 (Burns Code Ed.).

5. IC 1971, 19–4–4 (Burns Code Ed.).

6. IC 1971, 19–4–2 (Burns Code Ed.).

*Issue Three*

Mid-America contends that the trial court abused its discretion in refusing to issue a preliminary injunction to prevent Falender from digging a channel on Mid-America's real estate and to prevent Falender from discharging water onto Mid-America's real estate.

■ In *Rees v. Panhandle Eastern Pipe Line Co.*, (1978) Ind.App., 377 N.E.2d 640, Judge Sullivan set forth several guidelines governing the issuance of preliminary injunctions. At 645 he wrote:

"The grant or denial of a preliminary injunction rests in the sound discretion of the trial court and will not be disturbed except for abuse of that discretion. [Citations omitted] 'Abuse of discretion' has been defined as:

'. . . an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'

*McFarlan v. Fowler Bank City Trust Co.* (1938) 214 Ind. 10, 14, 12 N.E.2d 752, 754."

In general, the purpose of a preliminary injunction is the preservation of the status quo until the case can be heard on the merits. The plaintiff has a duty to demonstrate that he will suffer injury which is certain and irreparable if the application is denied. In making its decision, the trial court must evaluate the harm which may be caused the defendant if the injunction is issued, as compared with the harm which will befall the plaintiff if the application is denied. Likewise, the trial court has a duty to consider whether the public interest will be promoted or harmed by the granting or denying of the application for a preliminary injunction. *Rees v. Panhandle Eastern Pipe Line Co., supra.*

■ We agree with Mid-America in its contention that the trial court should have enjoined Falender from entering upon Mid-America's property and digging the channel. In *Rees v. Panhandle Eastern Pipe Line Co., supra,* this court noted that a plaintiff does not need to show irreparable injury or a balance of hardship in his favor when the challenged acts are unlawful or clearly against the public interest. We have held that the Town of Zionsville did not have jurisdiction of the Saylor drain on Mid-America's property. Accordingly, neither the Town of Zionsville nor its representative, Falender, could lawfully enter upon Mid-America's property for the purpose of reconstructing the Saylor drain.

We deem it clearly against the logic and effect of the facts and circumstances to refuse to enjoin Falender from digging the proposed channel when such work has been authorized by a board which is without jurisdiction and when the work would be accomplished without compliance with the Indiana Drainage Code. We hold that the trial court erred in refusing to enjoin Falender from entering upon Mid-America's property and from digging the proposed channel.

■ Mid-America argues that the trial court erred in refusing to enjoin Falender from discharging water from Falender's property onto Mid-America's property. Mid-America's evidence and arguments in the trial court, however, were directed primarily toward enjoining the digging of the channel. Throughout its appellant's brief Mid-America in most instances has referred to the channel as the irreparable harm which it anticipates; we have held that Falender should be enjoined from digging the channel.

The evidence indicates that the flow of water from Falender's property onto Mid-America's property may necessitate the installation of an underground pipe on Mid-America's property before development plans of Mid-America can be implemented. The trial court specifically found that, although the increased volume of water might damage Mid-America's property, Mid-America had not proven that it would suffer certain and irreparable damage from the water. The trial court also balanced the equities and determined that the issuance of a preliminary injunction would cause Falender much greater harm than the

denial would cause Mid-America. The trial court found that the public interest did not compel issuance of a preliminary injunction because few, if any, other land owners would be detrimentally affected by the denial of the application for a preliminary injunction.

Mid-America has relied upon several cases in which the granting of a preliminary injunction was affirmed on appeal. In reviewing the evidence in those cases the appellate tribunals, of course, looked to the evidence most favorable to the rulings of the trial courts. In each of those cases, the trial court had resolved factual issues in favor of the party seeking the preliminary injunction. In the case at bar, the trial court resolved the factual issues contrary to the contentions of the party seeking the preliminary injunction. Because the evidence in the record is in conflict, we must rely upon the factual determinations made by the trial court. *Peters v. Davidson, Inc.*, (1977) Ind.App., 359 N.E.2d 556.

The findings of the trial court which we have referred to above are supported by the evidence. The trial court did not abuse its discretion when it issued no preliminary injunction to prevent the discharge of water from Falender's property onto Mid-America's property.

This cause is remanded to the trial court for further proceedings consistent with this opinion.

NEAL, J., concurs.

YOUNG, J. (by designation), concurs with opinion.

YOUNG, Judge, concurring.

I concur in that part of the majority opinion holding that the Boone County Drainage Board may not relinquish its jurisdiction over that portion of the Saylor drain in Boone County to the Town of Zionsville. That holding is dispositive of this appeal and I would limit our decision to that issue without passing upon the propriety of Falender using the right of way of the Boone County Drainage Board over Mid-America's property.